Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Dr.
Newport Beach, CA 92660
Telephone: (949) 720-1288
Fax: (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| RANDY ZIMPRICH, individually, and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>        vs.<br><br>CAPITAL ONE FINANCIAL CORPORATION; and DOES 1 through 10,<br><br>                 Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Randy Zimprich ("Plaintiff"), individually, and on behalf of the Class defined below, brings this class action complaint against Defendant Capital One Financial Corporation ("Capital One") and DOES 1 through 10 (collectively, "Defendants") and alleges as follows:

## NATURE OF THE CASE

1.    On July 29, 2019, Capital One announced a massive data breach whereby Plaintiff and over 100  million of other consumers had a combination of their names, addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, self-reported income, credit scores, credit limits, balances, payment history, contact information, transaction data, Social Security numbers, bank account numbers and other private and personal information (collectively, "PII") acquired by an unauthorized party (the "Data Breach").

2.    Capital One claims to have first discovered the Data Breach on July 19, 2019, when "it determined there was unauthorized access by an outside individual who obtained certain types of personal information relating to people who had applied for its credit card products and to Capital One credit card customers. This occurred on March 22 and 23, 2019."

3.    According to Capital One, "[t]he largest category of information accessed was information on consumers and small businesses as of the time they applied for one of our credit card products from 2005 through early 2019. This information included personal information Capital One routinely collects at the time it receives credit card applications, including names, addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, and self-reported income."

4.    The unauthorized party also obtained "[c]ustomer status data, e.g., credit scores, credit limits, balances, payment history, contact information [and] [f]ragments of transaction data from a total of 23 days during 2016, 2017 and 2018."

5.    In addition, 140,000 Social Security numbers for credit card customers were acquired, and 80,000 bank account numbers for Capital One's secured credit

1

**CLASS ACTION COMPLAINT**

1   card customers were also acquired.

2        6.    Even more disappointing, Capital One only learned of the Data Breach

3   because an external security researcher who had no affiliation with Capital One

4   informed it that a Data Breach likely occurred.

5        7.    Although Capital One claims it encrypts its data as a standard practice,

6   it admits that "[d]ue to the particular circumstances of this incident, the unauthorized

7   access also enabled the decrypting of data," meaning Plaintiffs and Class members

8   information is undoubtedly compromised.

9        8.    To make matters worse, the unauthorized party posted the PII of these

10  approximate 100 million consumers to her GitHub account on April 21, 2019, which

11  was free and available with instructions for any user on the internet to download and

12  further exploit.   Nonetheless, it was not until July 29, 2019, that Capital One made

13  the information of their firewall being breached to the public.

14       9.    The Data Breach occurred not only because Capital One failed to

15  implement adequate security measures to safeguard Plaintiff's and Class members'

16  personal information, but because it willfully ignored known weaknesses in its data

17  security.  Unauthorized parties routinely attempt to gain access to and steal personal

18  information from networks and information systems, especially from entities such as

19  Capital One known to possess a large number of individuals' valuable personal and

20  financial information.

21       10.   Armed with this personal information—which hackers can sell to other

22  thieves or post for free as with this Data Breach—thieves can commit a variety of

23  crimes that harm victims of a data breach.  For instance, they can take out loans,

24  mortgage property, open financial accounts, and open credit cards in a victim's name;

25  use a victim's information to obtain government benefits or file fraudulent returns to

26  obtain a tax refund; obtain a driver's license or identification card in a victim's name;

27  gain employment in another person's name; or give false information to police during

28  an arrest.

**CLASS ACTION COMPLAINT**

11.    As a result of Capital One's willful failure to prevent the Data Breach, Plaintiff and Class members are more susceptible to identity theft and have experienced, will continue to experience and will face an increased risk of financial harms, in that they are at substantial risk of identity theft, fraud, and other harm because of the Data Breach—including the risk of bodily harm or death because of misdiagnosis or mistreatment as a result of medical identity theft or fraud.

12.    Plaintiff, individually and on behalf of similarly situated consumers, seek to recover damages, equitable relief, including injunctive relief designed to prevent a reoccurrence of the Data Breach and resulting injuries, restitution, disgorgement, reasonable costs and attorneys' fees, and all other remedies the Court deems proper.

## PARTIES

### Plaintiff Randy Zimprich

13.    Plaintiff Randy Zimprich is a resident of Orange County, California and provided his information to Capital One when applying for a Capital One car loan in Orange County, California in June 2016.  When Plaintiff provided his information to Capital One, Plaintiff understood, based on statements made by Capital One, that Capital One would protect that information as part of the agreed upon services. As a result of the Data Breach, Plaintiff has spent many hours addressing issues arising from the Data Breach, including monitoring his credit cards and bank accounts for fraudulent activity.

### Defendant Capital One Financial Corporation

14.    Defendant Capital One is Delaware Corporation with its headquarters and principal place of business located in McLean, Virginia.

### Unknown Defendants

15.    The true names and/or capacities, whether individual, corporate, partnership, associate or otherwise, of the Defendants herein designated as Does and/or Roes are unknown to Plaintiff at this time who, therefore, sues said Defendants

3

**CLASS ACTION COMPLAINT**

by fictitious names.  Plaintiff alleges that each named Defendant herein designated as Does and/or Roes is negligently, willfully, contractually, or otherwise legally responsible for the events and happenings herein referred to and proximately caused damages to Plaintiffs as herein alleged.  Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such Defendants when they have been ascertained and will further seek leave to join said Defendants in these proceedings.

16.    Plaintiff is informed and believe and thereon alleges that at all times mentioned herein, Does and/or Roes were agents, servants, employees, partners, distributors or joint ventures of each other and that in doing the acts herein alleged, were acting within the course and scope of said agency, employment, partnership, or joint venture. Each and every Defendant aforesaid was acting as a principal and was negligent or grossly negligent in the selection, hiring and training of each and every other Defendant or ratified the conduct of every other Defendant as an agent, servant, employee or joint venture.

## JURISDICTION AND VENUE

17.    This Court has diversity jurisdiction over this action based on the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5 million exclusive of interest and costs, and at least one class member is a citizen of a state different from Defendants.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are corporations that do business in and are subject to personal jurisdiction in this District, regularly transacts business here, and some of the class members reside in this District.  In addition, the events giving rise to Plaintiff's causes of action arose, in part, in this District.

///

///

**CLASS ACTION COMPLAINT**

# FACTS

## A.    The Data Breach

19.    Capital One is one of the largest banks in the United States, offering a broad spectrum of financial products and services to consumers including credit cards and is among the biggest banks in the United States with $373.6 billion in total assets as of 2019 and with revenues in excess of $28 billion in 2018.

20.    In order to apply for and obtain Capital One's banking services, Capital One required Plaintiff and Class members to provide Capital One with their PII.

21.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and the Class members' PII, Capital One assumed legal and equitable duties to those individuals. Capital One knew and promised to be responsible for protecting Plaintiff's and Class members' PII from disclosure.

22.    Specifically, in exchange of this information, Capital One expressly promised Plaintiff and Class members it was "committed to protecting your personal and financial information. If we collect identifying information from you, we will protect that information with controls based upon internationally recognized security standards, regulations, and industry-based best practices."

23.    Capital One further agreed it would "protect [their] personal information from unauthorized access and use, [and it] use[s] security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."

24.    Additionally, Capital One, in exchange for Plaintiff's and Class members' PII, promised it would act with the "understand[ing of] how important security and confidentiality are to [its] customers, so [it] use[s] the following security techniques, which comply with or even exceed federal regulatory requirements to protect information about you . . . ."

25.    Despite these promises and agreements which Capital One woefully failed to adhere to, Capital One intentionally, willfully, recklessly, or negligently

**CLASS ACTION COMPLAINT**

failed to take adequate and reasonable measures to ensure its data systems were protected; failed to disclose to its customers the material fact that it did not have adequate computer systems and security practices to safeguard customer PII; failed to take available steps to detect and prevent the Data Breach; failed to monitor and timely detect the Data Breach; and failed to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

26.     On July 29, 2019, Capital One admitted to one of the largest data breaches in history, in which more than 100 million US consumers were affected.

27.     In its July 29, 2019 press release, Capital One admitted that "on July 19, 2019, it determined there was unauthorized access by an outside individual who obtained certain types of personal information relating to people who had applied for its credit card products and to Capital One credit card customers."

28.     Capital One claimed that "[b]ased on [its] analysis to date, this event affected approximately 100 million individuals in the United States and approximately 6 million in Canada."

29.     Capital One further claimed that the "largest category of information accessed was information on consumers and small businesses as of the time they applied for one of our credit card products from 2005 through early 2019. This information included personal information Capital One routinely collects at the time it receives credit card applications, including names, addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, and self-reported income. Beyond the credit card application data, the individual also obtained portions of credit card customer data," which included "[c]ustomer status data, e.g., credit scores, credit limits, balances, payment history, contact information" and "[f]ragments of transaction data from a total of 23 days during 2016, 2017 and 2018."

30.     In its attempt to minimize the Data Breach, Capital One claims that "[n]o bank account numbers or Social Security numbers were compromised, other than: [a]bout 140,000 Social Security numbers of our credit card customers [and] [a]bout

**CLASS ACTION COMPLAINT**

80,000 linked bank account numbers of our secured credit card customers."

31.    Although Capital One claimed it "will notify affected individuals through a variety of channels," it provided no explanation as to why it had taken nearly two weeks to notify consumers of the Data Breach, or why it took so long for detect the Data Breach.

32.    In this press release, Capital One further made false promises that were akin to those made in its agreements with Plaintiff and Class members: "Safeguarding our customers' information is essential to our mission and our role as a financial institution. We have invested heavily in cybersecurity and will continue to do so. We will incorporate the learnings from this incident to further strengthen our cyber defenses."

33.    To make matters worse, the unauthorized party that acquired Plaintiff's and Class members' PII posted their information to her GitHub account on April 21, 2019, and made it free and available with instructions for any user on the internet to download and further exploit.

34.    Despite all of this, Capital One attempted to downplay the Data Breach by claiming "it is unlikely that the information was used for fraud or disseminated by this individual."

35.    Plaintiff's and Class members' PII was compromised due to Capital One's acts and omissions and its failure to properly protect their PII, despite being aware of cybersecurity standards, industry best practices, and the vulnerability of financial service institutions to attack.

36.    In addition to its failure to prevent the Data Breach, Capital One also failed to detect the Data Breach for at least three months, despite it being publicly represented on the popular and often trafficked GitHub website.  Intruders, therefore, had at least three months to access, collect, download, and make use of this information for fraudulent and other malicious purposes.

37.    During this time, Capital One failed to recognize its systems had been

7

**CLASS ACTION COMPLAINT**

breached and that intruders were stealing the PII of 100 million credit card applicants. Indeed, the Data Breach was not even discovered as a result of Capital One's diligence or their internal cyber security systems, but rather by a third party who "sent a message to the company's responsible disclosure email address with a link to the GitHub page."

38.    While timely action by Capital One in identifying the Breach would likely have significantly reduced the harmful consequences, instead, their inaction and negligence contributed to the scale of the Data Breach and the resulting damages to Plaintiff and Class members.

**B.    Personally Identifiable Information ("PII")**

39.    PII is of great value to hackers and cyber criminals and the data compromised in the Data Breach can be used in a variety of unlawful manners.

40.    PII is information that can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and biometric records.  This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.

41.    PII does not include only data that can be used to directly identify or contact an individual (e.g., name, e-mail address), or personal data that is especially sensitive (e.g., Social Security number, bank account number, payment card numbers).

42.    Given the nature of the Data Breach, it is foreseeable that the compromised PII will be used to access Plaintiff's and the Class members' financial accounts, thereby providing access to additional PII or personal and sensitive information.  Therefore, the compromised PII in the Data Breach is of great value to hackers and thieves and can be used in a variety of ways.  Information about, or related to, an individual for which there is a possibility of logical association with other information is of great value to hackers and thieves.  Indeed, "there is significant

**CLASS ACTION COMPLAINT**

evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[1]  For example, different PII elements from various sources may be able to be linked in order to identify an individual, or access additional information about or relating to the individual.

43.     Further, as technology advances, computer programs may scan the Internet with wider scope to create a mosaic of information that may be used to link information to an individual in ways that were not previously possible.  This is known as the "mosaic effect."[2]

44.     Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts particularly when they have easily-decrypted passwords and security questions.

45.     The PII exposed by Capital One is of great value to hackers and cyber criminals and the data compromised in the Data Breach can be used in a variety of unlawful manners, including opening new credit and financial accounts in users' names, obtaining protected health information, and/or committing medical fraud.

46.     Unfortunately for Plaintiff and Class members, a person whose PII has been compromised may not fully experience the effects of the breach for years to come:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out

---

[1] Fed. Trade Comm'n, Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers, Preliminary FTC Staff Report 35-38 (Dec. 2010) <https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-preliminary-ftc-staff-report-protecting-consumer/101201privacyreport.pdf> [as of June 24, 2017].
[2] Fed. Chief Information Officers Council, Recommendations for Standardized Implementation of Digital Privacy Controls (Dec. 2012) pp. 7-8.

**CLASS ACTION COMPLAINT**

all future harm.[3]

47.    Accordingly, Plaintiff and Class members will bear a heightened risk of injury for years to come.  Identity theft is one such risk and occurs when an individuals' PII is used without his or her permission to commit fraud or other crimes.[4]

48.    According to the Federal Trade Commission, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[5]

49.    As a direct and proximate result of Capital One's reckless and negligent actions, inaction, and omissions, the resulting Data Breach, the unauthorized release and disclosure of Plaintiff's and Class members' PII, and Capital One's failure to properly and timely notify Plaintiff and Class members, Plaintiff and Class members are more susceptible to identity theft and have experienced, will continue to experience and will face an increased risk of experiencing the following injuries, *inter alia*:

    a.  money and time expended to prevent, detect, contest, and repair identity theft, fraud, and/or other unauthorized uses of personal information;

    b.  money and time lost as a result of fraudulent access to and use of their financial accounts;

    c.  loss of use of and access to their financial accounts and/or credit;

---

[3] G.A.O., Personal Information:  Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown (June 2007) <http://www.gao.gov/assets/270/262904.html.> [as of June 24, 2017].

[4] Fed. Trade Comm'n, Taking Charge: What To Do If Your Identity Is Stolen (April 2013)  <https://www.consumer.ftc.gov/articles/pdf-0014-identity-theft.pdf>  [as of June 24, 2017].

[5] Fed. Trade Comm'n, Protecting Consumer Privacy in an Era of Rapid Change (March  2012)  <https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-report-protecting-consumer-privacy-era-rapid-change-recommendations/120326privacyreport.pdf> [as of June 24, 2017].

**CLASS ACTION COMPLAINT**

d.  money and time expended to avail themselves of assets and/or credit frozen or flagged due to misuse;

e.  impairment of their credit scores, ability to borrow, and/or ability to obtain credit;

f.  lowered credit scores resulting from credit inquiries following fraudulent activities;

g.  money, including fees charged in some states, and time spent placing fraud alerts and security freezes on their credit records;

h.  costs and lost time obtaining credit reports in order to monitor their credit records;

i.  anticipated future costs from the purchase of credit monitoring and/or identity theft protection services;

j.  costs and lost time from dealing with administrative consequences of the Data Breach, including by identifying, disputing, and seeking reimbursement for fraudulent activity, canceling compromised financial accounts and associated payment cards, and investigating options for credit monitoring and identity theft protection services;

k.  money and time expended to ameliorate the consequences of the filing of fraudulent tax returns;

l.  lost opportunity costs and loss of productivity from efforts to mitigate and address the adverse effects of the Data Breach including, but not limited to, efforts to research how to prevent, detect, contest, and recover from misuse of their personal information;

m.  loss of the opportunity to control how their personal information is used; and

n.  continuing risks to their personal information, which remains subject to further harmful exposure and theft as long as Capital One fails to undertake appropriate, legally required steps to protect the personal

**CLASS ACTION COMPLAINT**

information in its possession.

50.    The risks associated with identity theft are serious.  "While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record.  Some consumers victimized by identity theft may lose out on job opportunities, or denied loans for education, housing or cars because of negative information on their credit reports.  In rare cases, they may even be arrested for crimes they did not commit."[6]

51.    Further, criminals often trade stolen PII on the "cyber black-market" for years following a breach.  Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

**C.    The Banking Industry is a Constant Target for Malicious Actors**

52.    Data breaches have become widespread. In 2016, the number of U.S. data breaches surpassed 1,000, representing a record high and a forty percent increase from the previous year.   In 2017 a new record high of 1,579 breaches was reached representing a 44.7% increase over 2016.  The banking sector remained a high target among cyber criminals with 135 data breaches in 2018 alone.

53.    "The risk of cyberattack on financial services firms cannot be overstated" as financial services companies "fall victim to cybersecurity attacks 300 times more frequently than businesses in other industries."  Indeed, "financial institutions have long been a lucrative target for cybercriminals because of the massive volumes of data and money that can be stolen."  A recent study from the cybersecurity firm Intsights confirmed that the Banking and Financial sectors were hit with a constant stream of cyber-attacks when compared to other sectors.

54.    The consequences to affected consumers are significant as sensitive personal and financial information is exposed. It is further exacerbated when, as here, compromised PII includes Social Security numbers which make it possible for

---

[6] True Identity Protection: Identity Theft Overview, ID Watchdog <http://www.idwatchdog.com/tikia//pdfs/Identity-Theft-Overview.pdf> [as of Sept. 23, 2016].

**CLASS ACTION COMPLAINT**

thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.  Each of these fraudulent activities is difficult to detect and may not be uncovered until the number has been used in a fraudulent transaction. Moreover, it is no easy task to change or cancel a stolen Social Security number. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."

55.    Capital One knew the importance of safeguarding customer PII entrusted to it and of the foreseeable consequences if its data security systems were to be breached, including the significant costs that would be imposed on its customers as a result of a breach.

**D.    The Gramm-Leach-Bliley Act**

56.    Capital One is a financial institution, as that term is defined by Section 509(3)(A) of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6809(3)(A), and thus is subject to the GLB Act.

57.    The GLBA defines a financial institution as "any institution the business of which is engaging in financial activities as described in Section 1843(k) of Title 12 [The Bank Holding Company Act of 1956]." 15 U.S.C. § 6809(3)(A).

58.    Capital One collects nonpublic personal information, as defined by 16 C.F.R. § 313.3(n).

59.    Accordingly, during the relevant time period, Capital One was subject to the requirements of the GLBA Privacy Rule, 16 C.F.R. § 313.1 *et seq.*, and is subject to numerous other rules and regulations.

60.    In addition, "Nonpublic personal information," includes PII (such as the PII compromised during the Data Breach) for purposes of the GLBA. Likewise, "sensitive customer information" includes PII for purposes of the Interagency Guidelines Establishing Information Security Standards.

13

**CLASS ACTION COMPLAINT**

61.    The GLBA imposes upon "financial institutions" "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801.  To satisfy this obligation, financial institutions must satisfy certain standards relating to administrative, technical, and physical safeguards:

> (1) to **insure the security and confidentiality of customer records and information**;
>
> (2) to **protect against any anticipated threats or hazards to the security or integrity of such records**; and
>
> (3) to **protect against unauthorized access to or use of such records** or information which could result in substantial harm or inconvenience to any customer. 15 U.S.C. § 6801(b) (emphasis added).

62.    In order to satisfy their obligations under the GLBA, financial institutions must "develop, implement, and maintain a comprehensive information security program that is [1] written in one or more readily accessible parts and [2] contains administrative technical, and physical safeguards that are appropriate to [their] size and complexity, the nature and scope of [their] activities, and the sensitivity of any customer information at issue." *See* 16 C.F.R. § 314.4. "In order to develop, implement, and maintain [their] information security program, [financial institutions] shall:

> (a) Designate an employee or employees to coordinate [their] information security program.
>
> (b) **Identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer informatio**n that could result in the unauthorized disclosure, misuse, alteration, destruction or other compromise of such information, and assess the sufficiency of any safeguards in place to control these risks. At a minimum, such a risk assessment should include consideration of risks in each relevant area of [their] operations, including:
>
> (1) Employee training and management;
>
> (2) Information systems, including network and software design, as well as information processing, storage,

14

**CLASS ACTION COMPLAINT**

transmission and disposal; and

(3) Detecting, preventing and responding to attacks, intrusions, or other systems failures.

(c) ***Design and implement information safeguards to control the risks [they] identify through risk assessmen***t, and regularly test or otherwise monitor the effectiveness of the safeguards' key controls, systems, and procedures.

(d) Oversee service providers, by:

(1) Taking reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue; and

(2) Requiring [their] service providers by contract to implement and maintain such safeguards.

(e) ***Evaluate and adjust [their] information security program in light of the results*** of the testing and monitoring required by paragraph (c) of this section; any material changes to [their] operations or business arrangements; or any other circumstances that [they] know or have reason to know may have a material impact on [their] information security program."

*Id.* (emphasis added).

63.    In addition, under the Interagency Guidelines Establishing Information Security Standards, 12 C.F.R. pt. 225, App. F, financial institutions have an affirmative duty to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems." *See id.* "At a *minimum*, an institution's response program should contain procedures for the following:

a. the nature and scope of an incident, and identifying what customer information systems and types of customer information have been accessed or misused;

b. Notifying its primary Federal regulator as soon as possible when the institution becomes aware of an incident involving unauthorized access to or use of sensitive customer information, as defined below;

c. Consistent with the Agencies' Suspicious Activity Report ("SAR") regulations, notifying appropriate law enforcement authorities, in addition to filing a timely SAR in situations involving Federal criminal

**CLASS ACTION COMPLAINT**

violations requiring immediate attention, such as when a reportable violation is ongoing;

d. Taking appropriate steps to contain and control the incident to prevent further unauthorized access to or use of customer information, for example, by monitoring, freezing, or closing affected accounts, while preserving records and other evidence; and

e. Notifying customers when warranted.

*Id.* (emphasis added).

64. Further, "[w]hen a financial institution becomes aware of an incident of unauthorized access to sensitive customer information, the institution should conduct a reasonable investigation to promptly determine the likelihood that the information has been or will be misused. If the institution determines that misuse of its information about a customer has occurred or is reasonably possible, it should notify the affected customer as soon as possible." *See id.*

65. Upon information and belief, Capital One failed to "develop, implement, and maintain a comprehensive information security program" with "administrative, technical, and physical safeguards" that were "appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." This includes, but is not limited to, Capital One's failure to (a) implement and maintain adequate data security practices to safeguard Class members' PII; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Class members' PII.

66. Upon information and belief, Capital One also failed to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems" as mandated by the GLBA. This includes, but is not limited to, Capital One's failure to notify appropriate regulatory agencies, law enforcement, and the affected individuals themselves of the Data Breach in a timely and adequate manner.

67. Upon information and belief, Capital One also failed to notify affected

customers as soon as possible after it became aware of unauthorized access to sensitive customer information.

## CLASS ACTION ALLEGATIONS

68.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23(b)(1), (b)(2), (b)(3), and (c)(4).

### A.    Class Definitions

69.    Plaintiff brings all claims on behalf of a proposed nationwide class ("Nationwide Class"), defined as follows:

> *All natural persons and entities in the United States whose personal identifying information was exposed in the data breach announced by Capital One on July 29, 2019.*

70.    Additionally, Plaintiffs bring this action on behalf of the following California class ("California Subclass") (collectively, the Nationwide Class and California Subclass are referred to as "Classes") seeking damages and equitable relief on behalf of:

> *All natural persons and entities in the State of California whose personal identifying information was exposed in the data breach announced by Capital One on July 29, 2019.*

71.    Excluded from the Classes are: (1) Defendants, any entity or division in which any Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) governmental entities. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded, divided into further subclasses, or modified in any other way.

72.    **Numerosity:** The Nationwide Class is so numerous that joinder of all members is impracticable.  Based on information and belief, the Nationwide Class includes over 100 million consumer whose PII was compromised, stolen, and/or disclosed during the Data Breach.  Moreover, the California Subclass is believed to

17

## CLASS ACTION COMPLAINT

include more than 100 persons.  The parties will be able to identify the exact size of the class through discovery and Capital One's own documents.

73.    **Commonality:** There are numerous questions of law and fact common to Plaintiff and the Classes including, but not limited to, the following:

- whether Defendants engaged in the wrongful conduct alleged herein;
- whether Defendants owed a duty to Plaintiff and members of the Class to adequately protect their personal information;
- whether Defendants breached their duties to protect the personal information of Plaintiff and Class members;
- whether Capital One knew or should have known that its data security systems, policies, procedures, and practices were vulnerable to attack;
- whether Plaintiff and Class members suffered legally cognizable damages as a result of Defendants' conduct, including increased risk of identity theft and loss of value of PII;
- whether Defendants violated state consumer protection statutes;
- whether Capital One's conduct described herein constitutes a breach of its implied or express contracts with Plaintiff and the members of the Class;
- whether Plaintiff and Class members received the benefit of the bargain;
- whether Defendant Capital One should retain the money paid by Plaintiff and Class members to protect their Personal Information;
- whether Plaintiff and Class members are entitled to damages as a result of Defendants' conduct; and
- whether Plaintiff and Class members are entitled to equitable relief including injunctive relief.

74.    **Typicality:** Plaintiff's claims are typical of the claims of the Class members.  Plaintiff, like all proposed Class members, had their personal information compromised in the Data Breach.

**CLASS ACTION COMPLAINT**

75.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has no interests that are averse to, or in conflict with, the Class members.  There are no claims or defenses that are unique to Plaintiff.  Likewise, Plaintiff has retained counsel experienced in class action and complex litigation, including data breach litigation, and have sufficient resources to prosecute this action vigorously.

76.    **Predominance:** The proposed action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions which may affect only individual Class members.

77.    **Superiority:** The proposed action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

78.    Absent a class action, the majority Class members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

79.    **Risks of Prosecuting Separate Actions:** Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Capital One.  Capital One continues to maintain the PII of Class members and other individuals, and varying adjudications could establish incompatible standards with respect to its duty to protect individuals' personal information; and whether the injuries suffered by Class members are legally cognizable, among others.  Prosecution of separate action by individual class members would also create a risk of individual

**CLASS ACTION COMPLAINT**

adjudications that would be dispositive of the interests of other class members not parties to the individual adjudications, or substantially impair or impede the ability of class members to protect their interests.

80.    **Injunctive Relief:** In addition, Defendants have acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the class under Federal Rule of Civil Procedure 23(b)(2).  Defendants continue to (1) maintain the personally identifiable information of Class members, (2) fail to adequately protect their personally identifiable information, and (3) violate their rights under numerous state consumer protection laws and other claims alleged herein.

## CAUSES OF ACTION

### COUNT I

### Negligence

(On Behalf of the Classes Against Defendants)

81.    Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

82.    Plaintiff brings this claim on behalf of herself and the Classes.

83.    Capital One required Plaintiff and members of the Classes to submit their PII in order to apply for its credit cards and banking services. Defendants collected, used, stored, and profited from this information.

84.    By collecting, using, storing, and profiting from this data, Capital One assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent the unauthorized disclosure of it, to guard it from theft, and to detect any attempted or actual breach of its system by which this information could be compromised.

85.    Defendants have full knowledge about the sensitivity of Plaintiff and Class members' PII, as well as the type of harm that would occur if such PII was wrongfully disclosed.

**CLASS ACTION COMPLAINT**

86.    Defendants have a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with this PII.

87.    Defendants breached their duty of care by failing to secure and safeguard the PII of Plaintiff and Class members.  Defendants negligently stored and/or maintained its data security systems.

88.    Further, Defendants by and through their above negligent actions and/or inactions, breached their duties to Plaintiff and Class members by failing to design, adopt, implement, control, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff's and Class members' PII within their possession, custody, and control.

89.    Plaintiff and the other Class members have suffered harm as a result of Defendants' negligence.  These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, fraud, and myriad other types of fraud and theft stemming from either use of the compromised information, or access to their user accounts.

90.    It was reasonably foreseeable – in that Defendants knew or should have known – that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII would result in its release and disclosure to unauthorized third parties who, in turn wrongfully used such PII, or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

91.    But for Defendants' negligent and wrongful breach of their responsibilities and duties owed to Plaintiff and Class members, their PII would not have been compromised.

92.    As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class members' PII, they have incurred (and will continue to incur) the above-referenced economic damages, and

21

**CLASS ACTION COMPLAINT**

other actual injury and harm for which they are entitled to compensation. Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence/negligent misrepresentation.

93.    Plaintiff and Class members are entitled to injunctive relief as well as actual and punitive damages.

**COUNT II**

**Violation of California Consumers Legal**

**Remedies Act, California Civil Code § 1750, *et seq.***

(On Behalf of the California Subclass Against Defendants)

94.    Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

95.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*  This cause of action does not seek monetary damages at this time but is limited solely to injunctive relief.  Plaintiff will later amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice required by California Civil Code § 1782.

96.    Plaintiff and California Subclass Members are "consumers," as the term is defined by California Civil Code § 1761(d).

97.    Plaintiff, California Subclass members, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

98.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant was likely to deceive consumers.

99.    Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

100.    Defendants violated this provision by representing that they took

22

**CLASS ACTION COMPLAINT**

appropriate measures to protect Plaintiff's and the California Subclass members' PII. Additionally, Defendants improperly handled, stored, or protected either unencrypted or partially encrypted data.

101.    As a result, Plaintiff and California Subclass members were induced to enter into a relationship with Defendants and provide their PII.

102.    As a result of engaging in such conduct, Defendants have violated Civil Code § 1770.

103.    Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

104.    Plaintiff and California Subclass members suffered injuries caused by Defendants' misrepresentations, because they provided their PII believing that Defendants would adequately protect this information.

105.    Plaintiff and California Subclass members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

106.    The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and members of the California Subclass.

**COUNT III**

**Violation of Unfair Competition Law,**

**California Business and Professional Code Section 17200, *et seq*.**

(On Behalf of the California Subclass Against Defendants)

107.    Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

108.    Plaintiff brings this claim on behalf of herself and the California Subclass.

109.    The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business

act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

110.   By reason of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff and California Subclass members' PII, Defendants engaged in unlawful, unfair and fraudulent practices within the meaning of the UCL.

111.   Defendants' business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, in that the private and confidential PII of consumers has been compromised for all to see, use, or otherwise exploit.

112.   Defendants' practices were unlawful and in violation of Civil Code § 1798 *et seq.* because Defendants failed to take reasonable measures to protect Plaintiff's and the California Subclass members' PII.

113.   Defendants' business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the PII they provide to Defendants will remain private and secure, when in fact it was not private and secure.

114.   Plaintiff and the California Subclass members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions including, *inter alia*, the unauthorized release and disclosure of their PII.

115.   Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and California Subclass members' PII also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq.*, in that Defendants' conduct was substantially injurious to Plaintiff and Nationwide Class members, offensive to public policy, immoral, unethical, oppressive and unscrupulous; the gravity of Defendants' conduct outweighs any alleged benefits

**CLASS ACTION COMPLAINT**

attributable to such conduct.

116.  But for Defendants' misrepresentations and omissions, Plaintiff and Nationwide Class members would not have provided their PII to Defendants or would have insisted that their PII be more securely protected.

117.  As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and California Subclass members' PII, they have been injured: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendants; (3) the compromise, publication, and/or theft of their PII; and (4) costs associated with monitoring their PII, amongst other things.

118.  Plaintiff takes upon herself enforcement of the laws violated by Defendants in connection with the reckless and negligent disclosure of PII.  There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees and costs from the recovery in this action.  Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure § 1021.5.

**COUNT IV**

**Violation of California Customer Records**

**Act, California Civil Code § 1798.80 et. seq.**

(On Behalf of the California Subclass Against Defendants)

119.  Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

120.  "[T]o ensure that personal information about California residents is protected," Civil Code section 1798.81.5 requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized

25

**CLASS ACTION COMPLAINT**

access, destruction, use, modification, or disclosure."

121.   Defendants own, maintain, and license personal information, within the meaning of section 1798.81.5, about Plaintiff and the Nationwide Class.

122.   Defendants violated Civil Code section 1798.81.5 by failing to implement reasonable measures to protect Plaintiff and California Subclass members' personal information.

123.   As a direct and proximate result of Defendants' violations of section 1798.81.5 of the California Civil Code, the Data Breach described above occurred.

124.   As a direct and proximate result of Defendants' violations of section 1798.81.5 of the California Civil Code, Plaintiff and the California Subclass members suffered the damages described above including, but not limited to, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personally identifying information.

125.   Plaintiff and the California Subclass members seek relief under section 1798.84 of the California Civil Code including, but not limited to, actual damages, to be proven at trial, and injunctive relief.

**COUNT V**

**Breach of Contract**

(On Behalf of the Classes Against Defendants)

126.   Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

127.   Capital One solicited and invited Plaintiffs and Class members to apply for credit card products by providing their PII. Plaintiffs and Class members accepted Capital One's offers and provided their PII to Capital One to apply for Capital One credit card products.

128.   When Plaintiffs and Class members applied Capital One credit card products, they provided their PII to Capital One. In so doing, Plaintiffs and Class

**CLASS ACTION COMPLAINT**

members on the one hand, and Capital One on the other, entered into mutually agreed-upon contract pursuant to which Plaintiffs and Class members agreed that their PII was valid and could be used by Capital One for limited purposes, while Capital One agreed that it would use Plaintiffs' and Class members' PII in its possession for only the agreed-upon purpose of processing the credit card product application and maintain that information securely, and no other purpose.

129.    Implicit in the agreement to use the PII in its possession for only the agreed-upon application and no other purpose was the obligation that Capital One would use reasonable measures to safeguard and protect the PII of Plaintiffs and Class members in its possession.

130.    By accepting PII for credit card product applications, Capital One assented to and confirmed its agreement to reasonably safeguard and protect Plaintiffs' and Class members' PII from unauthorized disclosure or uses and to timely and accurately notify Plaintiffs and Class members if their data had been breached and/or compromised.

131.    Plaintiffs and Class members would not have provided and entrusted their PII to Capital One to apply for the Capital One credit card products in the absence of the implied contract between them and Capital One.

132.    Plaintiffs and Class members fully performed their obligations under the implied contracts with Capital One.

133.    Capital One breached the implied contracts it made with Plaintiffs and Class members by failing to safeguard and protect Plaintiffs' and Class members' PII, and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

134.    Capital One breached the implied contracts it made with Plaintiffs and Class members by failing to ensure that Plaintiffs' and Class members' PII in its possession was used only for the agreed-upon application verification and no other purpose.

27

**CLASS ACTION COMPLAINT**

135.  Plaintiffs and Class members conferred a monetary benefit on Capital One which has accepted or retained that benefit. Specifically, the credit card products typically carry annual fees and other charges (e.g. interest) for use.  In exchange, Plaintiffs and Class members should have received the services that were the subject of the transaction and should have been entitled to have Capital One protect their PII with adequate data security measures.

136.  Capital One failed to secure Plaintiffs' and Class members' PII and, therefore, did not provide full compensation for the benefit Plaintiffs and Class members provided.

137.  Capital One acquired the PII through inequitable means when it failed to disclose the inadequate security practices previously alleged.

138.  If Plaintiffs and Class members had known that Capital One would employ inadequate security measures to safeguard PII, they would not have applied for the Capital One credit card products.

139.  As a direct and proximate result of Capital One's breaches of the implied contracts between Capital One on the one hand, and Plaintiffs and Class members on the other, Plaintiffs and Class members sustained actual losses and damages as described in detail above.

140.  Plaintiffs and Class members were harmed as the result of Capital One's breach of the implied contracts because their PII was compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their PII was disclosed to third parties without their consent. Plaintiffs and Class members also suffered diminution in value of their PII in that it is now easily available to hackers on the dark web. Plaintiffs and the Class have also suffered consequential out-of-pocket losses for procuring credit freeze or protection services, identity theft monitoring, late fees, bank fees, and other expenses relating to identity theft losses or protective measures. The Class members are further damaged as their PII remains in the hands of those who obtained it without their consent.

**CLASS ACTION COMPLAINT**

141.    This breach of implied contracts was a direct and legal cause of the injuries and damages to Plaintiffs and Class members as described above.

## SIXTH CAUSE OF ACTION

### Invasion of Privacy

(On Behalf of the Classes Against Defendants)

142.    Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

143.    Plaintiff brings this claim on behalf of himself and the Classes.

144.    Plaintiff and Class members have a legally protected privacy interest in their PII that Defendants required them to provide and stored.

145.    Plaintiff and Class members reasonably expected that their PII would be protected and secured from unauthorized parties, would not be disclosed to any unauthorized parties or disclosed for any improper purpose.

146.    Defendants unlawfully invaded the privacy rights of Plaintiff and Class members by (a) failing to adequately secure their PII from disclosure to unauthorized parties for improper purposes; (b) disclosing their PII to unauthorized parties in a manner that is highly offensive to a reasonable person; and (c) disclosing their PII to unauthorized parties without the informed and clear consent of Plaintiff and Class members.  Further, Defendants invaded the privacy rights of Plaintiffs and Class members by failing to adequately or timely take steps to remediate the Data Breach, or provide Class members notice of the Data Breach, once Defendants possessed knowledge to a substantial certainty that the Data Breach was occurring and that Class members were being harmed.  This invasion into the privacy interest of Plaintiff and Class members is serious and substantial.

147.    In failing to adequately secure Plaintiff's and Class members' PII, Defendants acted in reckless disregard of their privacy rights.  Defendants knew or should have known that their substandard data security measures are highly offensive to a reasonable person in the same position as Plaintiff and Class members.

**CLASS ACTION COMPLAINT**

148.    Defendants violated Plaintiff's and Class members' right to privacy under the common law as well as under state law, including but not limited to the California Constitution, Article I, Section I.

149.    As a direct and proximate result of Defendants' unlawful invasions of privacy, Plaintiff's and Class members' PII has been viewed or is at imminent risk of being viewed, and their reasonable expectations of privacy have been intruded upon and frustrated. Plaintiff and Class members have suffered injury as a result of Defendants' unlawful invasions of privacy and are entitled to appropriate relief.

**RELIEF REQUESTED**

Plaintiff, on behalf of herself and members of the Classes, request the Court enter judgment against Defendants as follows:

A.    An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Nationwide Class and California Subclass requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the Nationwide Class and California Subclass requested herein;

B.    Injunctive relief requiring Defendants to (1) strengthen their data security systems that maintain personally identifying information to comply with the applicable state laws alleged herein (including, but not limited to, the California Customer Records Act) and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendants' systems on a periodic basis; (3) promptly correct any problems or issues detected by such audits and testing; and (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

C.    An order requiring Defendant to pay all costs associated with class notice and administration of class-wide relief;

30

**CLASS ACTION COMPLAINT**

D.     An award to Plaintiff and all Nationwide Class members and California Subclass members of compensatory, consequential, incidental, exemplary, and statutory damages, restitution, and disgorgement, in an amount to be determined at trial;

E.     An award to Plaintiff and all Nationwide Class members and California Subclass members of additional credit monitoring and identity theft protection services beyond the package Capital One is currently offering;

F.     An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.     An order requiring Defendants to pay pre-judgment and post-judgment interest, as provided by law or equity; and

F.     Such other or further relief as the Court may allow.

Dated: September 4, 2019                    Respectfully submitted,

                                            **ROBINSON CALCAGNIE, INC.**

                                             */s/ Daniel S. Robinson*
                                            Daniel S. Robinson
                                            drobinson@robinsonfirm.com
                                            19 Corporate Plaza Dr.
                                            Newport Beach, CA 92660
                                            Telephone:  (949) 720-1288

**CLASS ACTION COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues in this action so triable of right.

Dated: September 4, 2019                    Respectfully submitted,

                                            ROBINSON CALCAGNIE, INC.

                                             /s/ Daniel S. Robinson
                                            Daniel S. Robinson
                                            drobinson@robinsonfirm.com
                                            19 Corporate Plaza Dr.
                                            Newport Beach, CA 92660
                                            Telephone:  (949) 720-1288

**CLASS ACTION COMPLAINT**